## CRAM v. DUDLEY.

Where, in trespass for damages done to the plaintiff's close, by the defendant's cattle, it appeared that the defendant resided upon a farm with his father, of which the defendant had a deed and his father a life-lease, and the plaintiff's evidence tended to show that the cows kept upon the farm had trespassed upon the plaintiff's premises, but that the defendant owned but one cow, which was also kept upon the farm—*Held*, that the evidence was competent to be submitted to the jury, from which they might find a trespass by the cow of the defendant.

By marriage, the husband, independant of all *ante* nuptial agreements, becomes the absolute owner of all the personal property in possession of the wife; and trespass can be sustained against the husband for an act done after the marriage, by an animal belonging to the wife at the time of the marriage.

TRESPASS, for breaking and entering the plaintiff's close (being a pasture) with cattle, &c. Plea, the general issue.

To prove the trespass, the plaintiff called James Cram as a witness, who testified that on one occasion, in the year 1850, he saw Dudley's cows in the plaintiff's pasture; but he could not tell how many there were, and could not describe them, only they were such cows as people generally have. He supposed they were Dudley's, because he had sometimes seen him drive them to a pasture on the farm where Dudley lived, and " they belonged to that pasture, let them be whose they would."

The plaintiff also called his daughter, who testified that in July, 1850, she saw eight of Dudley's cattle in her father's pasture, but she could not describe them; some of them were cows, but how many she could not tell. She only knew that she had seen the same cattle at Dudley's father's barn, but did not know which owned them.

The defendant then called his father, who testified that some years before, he gave his son a deed of the farm, reserving a life-estate; and, in 1850, his son and his wife lived with him, and assisted him in carrying on the farm, but that all the cattle upon the farm that year were his, the father's, excepting one cow, which belonged to the defendant's wife.

The court instructed the jury to find a verdict for the plaintiff, if they believed the defendant was sole or part owner of the cattle in question.

The plaintiff's counsel contended that if the ownership was, as stated by the father, it would be competent for the jury to find the defendant guilty, on account of the cow owned by his wife. But the court instructed the jury otherwise, both because there was no evidence to identify this particular cow as one that was seen in the plaintiff's pasture, and because the cow was said to belong to the wife.

The jury returned a verdict for the defendant, which the plaintiff moved to set aside for alleged error in the instructions of the court.

*Hutchinson* and *Bellows,* for the plaintiff.

I. There was evidence tending to prove that the cow, owned by the defendant's wife, was in the plaintiff's close. There were, on two occasions, cows in the plaintiff's pasture that were kept in Dudley's pasture, that Dudley was seen to drive. Cram says he saw Dudley's cows in the plaintiff's pasture, and it was competent for the jury, on this, to find that all his cows, or all kept on the place where he lived, were in. Such is the fair import of his language. Had there been less than all he would have said part. That he might have used this language when only a part were in is true, but that is for the jury.

That he was not well acquainted with the cows makes no difference. It was enough that he knew them to be the cows kept on that place, and that the defendant used to drive them. The amount was just this, that he knew the defendant's cows by seeing them in his pasture, and seeing him driving them, and that the cows he had so seen were in the plaintiff's close. This implies the whole, especially as the daughter says she saw there eight of the defendant's cattle.

II. If the cow belonged to the wife, it was, nevertheless,

in the possession of the husband, they being together, and so the action will lie against him. He at least had the control of the cow, so far as the keeping of her was concerned, while they were living together. And besides, by law, the property in the cow would vest in the husband. *Burleigh* v. *Coffin*, 2 Foster's Rep. 118; *Brown* v. *Fitz*, 13 N. H. Rep. 283.

There was no evidence to show that the cow was held by the wife, separate and apart from her husband. And it was competent for the jury to find that the title of the wife was such that the property vested in the husband. So, even if the wife was liable, the husband was also. *Hasbrouck* v. *Weaver*, 10 Johns. 246; 1 Chitty's Plead. 92; *State* v. *Harvey and Wife*, 3 N. H. Rep. 65.

*Bell*, for the defendant.

1. The burden of proof was on the plaintiff, and upon his evidence no inference could be fairly drawn either way in relation to the fact, which it was necessary for him to make out. James Cram's testimony, taken together, could only mean that he saw in the plaintiff's pasture cows, which he had seen the defendant drive, and which belonged or were usually kept in a certain pasture. The defendant was carrying on the farm of the elder Dudley, and drove his cows to pasture. Whether Mrs. Dudley's cow was ever kept in that pasture does not at all appear.

The testimony of the plaintiff's daughter left the matter, if possible, still more uncertain. See *Jones* v. *Jones*, 1 Foster's Rep. 219.

2. Upon the evidence stated in the case, the cow could not have been the defendant's, but must have been his wife's separate property; and the wife should have been made a defendant. 1 Bac. Abr. Baron and feme, I; 2 Saund. Pl. & Ev. 194.

EASTMAN, J. The plaintiff's counsel contended that if

the ownership of the cattle was, as stated by the defendant's father, still it would be competent for the jury to find the defendant guilty on account of the cow owned by his wife. But the court instructed the jury otherwise, both because there was no evidence to identify this particular cow as one that was seen in the plaintiff's pasture, and because the cow was said to belong to the wife.

There were two grounds upon which the court declined to give the instructions desired, and these grounds, we understand, were stated to the jury as the rule that should govern them; one was, that there was no competent evidence to show the particular cow in question to have been upon the plaintiff's premises, and the other that she belonged to the defendant's wife, and on that account, also, the action could not be maintained.

In regard to the trespass, the evidence was that the cows kept in Dudley's pasture, in the year 1850, and which the witness had seen the defendant drive to pasture, were upon the plaintiff's close. The other witness stated that the cattle she saw committing the trespass, some of which were cows, she had seen at the Dudley barn. Here was competent evidence from which the jury might find these cows and cattle to belong to the Dudleys. They were kept upon the Dudley farm, and the defendant was seen driving them to pasture. They were in possession of the Dudleys, and there was no evidence tending to show them to be the property of others.

But was the evidence competent to show the cow in question to have been trespassing upon the plaintiff's premises? We think it was, and that the jury might well have found from it that this particular cow was with the others. The defendant and his wife worked upon the farm; and nothing shows that they owned property elsewhere; and if this cow had been kept upon another farm, or in a different pasture from the other cows, (a thing very unlikely to happen upon the same farm,) the fact would undoubtedly have

Cram *v.* Dudley.

been shown by the father of the defendant. And when the witness speaks of the cows as Dudley's, or those which he had seen the defendant drive to pasture, and the defendant's father says that all the cattle upon the farm that year were his, excepting this cow, we think the inference from the testimony and circumstances of the case to be but fair that this cow was among them, and that the evidence was competent for the jury to consider, and from which they might find this cow to have been trespassing upon the close of the plaintiff. And the ruling of the court, in this respect, was wrong.

The other reason given, that the cow was said to belong to the defendant's wife, is not so clear. The defendant had a deed of the farm, and his father a life-lease of the same; and the defendant and his wife lived with the father, and assisted in carrying on the farm, and in all probability this cow was kept there with the other stock. Such appears to be the undoubted fact from the testimony of the father. The cow was in the possession of the husband, and at common law would be his property; and the statement that the cow belonged to the defendant's wife would be a legal untruth. The personal property of a wife, which she had in possession at the time of the marriage in her own right, such as money, goods and chattles and movables, vests immediately and absolutely in the husband, and he can dispose of it as he pleases, and on his death it goes to his representatives, as being entirely his property. 2 Kent's Com. 143. And so of whatever personal chattels accrue to the wife during coverture, the law gives to the husband the same absolute rights and powers. *Burleigh* v. *Coffin*, 2 Foster's Rep. 125.

But by the act of 1846, (Comp. Stat. ch. 159, §§ 12, 13,) the wife can hold property to her sole use, separate and apart from her husband; and inasmuch as the manner in which this cow was held did not appear upon the trial, the court will not presume, contrary to the express statement of

the witness, that the cow belonged to the defendant's wife, that she was not held by the wife under some provisions of the statute of 1846.

If the cow were the sole property of the wife, held by her for her separate use, a question might then arise whether the animal was not in possession of the husband, so as to make him liable for the trespass. But if not so held, the cow would be the defendant's, and he would be clearly liable.

But it is unnecessary to express any further opinion in regard to these inquiries. The facts respecting the matter can be brought out on the next trial, and the questions be then determined, if necessary.

The court, in their statement to the jury, appear to have taken it as a fact that should govern the jury, that the cow was the sole and separate property of the wife, and that, therefore, the action could not be maintained; and herein, we think, they erred. It appears to us that the instructions were, in this respect, incorrect, and calculated to mislead the jury. The verdict must be set aside and

*A new trial granted.*